## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **MISTY BRELO**, *on behalf of herself and all others similarly situated,* | ) Case No. 1:22-cv-2273 |
| | ) |
| | ) Judge |
| Named Plaintiff, | ) |
| v. | ) Magistrate Judge |
| | ) |
| **SABER HEALTHCARE HOLDINGS, LLC,** | ) **JURY DEMAND** |
| | ) **ENDORSED HEREON** |
| c/o Statutory Agent | ) |
| Gregory Nicoluzakis | ) |
| 23700 Commerce Park | ) |
| Beachwood, Ohio 44122-5827, | ) |
| | ) |
| *and* | ) |
| | ) |
| **SABER HEALTHCARE GROUP, L.L.C.,** | ) |
| c/o Statutory Agent | ) |
| Gregory Nicoluzakis | ) |
| 23700 Commerce Park | ) |
| Beachwood, Ohio 44122-5827, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Now comes Named Plaintiff Misty Brelo ("Brelo" or "Named Plaintiff"), by and through

undersigned counsel, *individually and on behalf of all others similarly situated*, for her Collective

and Class Action Complaint against Defendants Saber Healthcare Holdings, LLC ("SHH") and

Saber Healthcare Group, L.L.C. ("SHG") (collectively hereinafter "Saber Healthcare" or

"Defendants"), for Defendants' willful failure to pay Named Plaintiff and other similarly situated

employees overtime wages as well as failure to comply with all other requirements of the Fair

Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage

Standards Act, O.R.C. § 4111.03 ("the Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"),

O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and states and alleges as follows:

1.      Defendants operate over one hundred (100) nursing rehabilitation and long-term care facilities throughout the continental United States.

2.      Defendants employ hundreds, if not thousands, of hourly, non-exempt employees at its facilities nationwide.

3.      Defendants apply the same hourly regular rate miscalculation policies, procedures, and practices with respect to the payment of overtime wages to its hourly, non-exempt employees, as alleged in this Complaint, nationwide.

4.      As more fully alleged below, Defendants repeatedly and willfully violated the FLSA and the Ohio Acts by failing to pay its hourly workers, including Named Plaintiff and other members of the FLSA Collective and State Law Class (as further defined below), at the correct regular rate of pay during workweeks when they worked overtime and also received nondiscretionary additional remuneration, including, but not limited to shift differentials, pick up bonuses, and retention bonuses, in addition to their base hourly wages.

5.      All of Defendants' hourly workers who received nondiscretionary additional remuneration  including, but not limited to, shift differentials, pick up bonuses, and retention bonuses, in addition to their base hourly wages, including Named Plaintiff, at Defendants' facilities across the country have been subject to the same or similar regular rate miscalculation policies and practices, including policies and practices that resulted in repeated and willful violations of the FLSA and the Ohio Acts as alleged in this Complaint.

6.      In addition, Defendants willfully violated the FLSA and the Ohio Acts by failing to pay Named Plaintiff for all compensable hours each day worked, including, upon information

and belief, by deducting time worked at beginning and ends of shifts, as well as for a "meal period," even though the "meal period" was regularly missed, shortened, and/or interrupted by job duties at Defendants' direction and for Defendants' benefit.

7.       Named Plaintiff brings this action on behalf of herself and similarly situated current and former hourly employees who elect to opt in pursuant to the FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendants (the "FLSA Collective").

8.       Named Plaintiff also brings this action on behalf of herself and similarly situated current and former hourly employees pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the Ohio Acts claims (the "State Law Class").

## I.       <u>JURISDICTION AND VENUE</u>

9.       The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FLSA, 29 U.S.C. § 216(b).

10.      This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio (the Ohio Acts) over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

11.      Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in the Northern District of Ohio; Defendants are each Ohio for-profit companies, formed and subject to the laws of the State of Ohio; and Defendants conducted substantial business at its primary facility located at 23700 Commerce Park, Beachwood, Ohio 44122, which is in this judicial district and division.

## II.      <u>FACTUAL ALLEGATIONS</u>

### A.       **Named Plaintiff Misty Brelo**

12.     Named Plaintiff Brelo is an individual, a United States citizen, and a resident of Medina County, Ohio.

13.     Brelo worked for Defendants as an hourly nurse from approximately October 26, 2021 until October 31, 2022 at one of Defendants' senior living facilities in Tallmadge, Ohio, called "Tallmadge Health and Rehab," located at 619 Northwest Avenue, Tallmadge, Ohio 44278.

14.     At all times relevant, Brelo primarily performed non-exempt job duties such as direct patient care of the facility's residents during each shift.

15.     At all times relevant, Brelo was classified by Defendants as a non-exempt employee and was paid on an hourly basis.

16.     At all times relevant, Brelo was an "employee" of Defendants as defined in the FLSA and the Ohio Acts.

17.     Brelo's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

B.     **Defendants Saber Healthcare**

(i)     **Defendant SHH**

18.     At all times relevant, Defendant SHH is a domestic for-profit limited liability company authorized to do business in Ohio, subject to the laws of the State of Ohio, and it regularly conducts business in this judicial district and division. According to records maintained by the Ohio Secretary of State, Defendant SHH's Statutory Agent for service of process is Gregory Nicoluzakis, 23700 Commerce Park, Beachwood, Ohio 44122.[1]

---

[1] *See* https://businesssearch.ohiosos.gov?=businessDetails/1978992 (last accessed Dec. 15, 2022).

19.     At all times relevant, Defendant SHH was an "employer" of Named Plaintiff and other members of the FLSA Collective and State Law Class as that term is defined by the FLSA and the Ohio Acts, regardless of what facility(ies) they worked in, as described herein.

### (ii)     Defendant SHG

20.     At all times relevant, Defendant SHG was a domestic for-profit limited liability company authorized to do business in Ohio, subject to the laws of the State of Ohio, and regularly conducts business in this judicial district and division. According to records maintained by the Ohio Secretary of State, Defendant SHG's Statutory Agent for service of process is Gregory Nicoluzakis, 23700 Commerce Park, Beachwood, Ohio 44122.[2]

21.     At all times relevant, Defendant SHG was an "employer" of Named Plaintiff and other members of the FLSA Collective and State Law Class as that term is defined by the FLSA and the Ohio Acts, regardless of what facility(ies) they worked in, as described herein.

### (iii)     Defendants SHH and SHG's Statuses as a "Single Employer," "Single Enterprise," and Joint Employer of Named Plaintiff and Other Members of the FLSA Collective and State Law Class

22.     At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

23.     At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

24.     At all times relevant, Defendants have operated as a single enterprise within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose;

---

[2] *See* https://businesssearch.ohiosos.gov?=businessDetails/1267748 (last accessed Dec. 15, 2022).

namely, the operation of "Saber Healthcare" facilities across the eastern half of the continental United States.

25.     Defendants were individually and jointly "employers" within the meaning of the FLSA and the Ohio Acts of Named Plaintiff and other members of the FLSA Collective and State Law Class.

26.     Defendant SHH is the holding company of and controls all of the SHG facilities operating as "Saber Healthcare" facilities, including the employment terms and conditions of the hourly, non-exempt employees, including Named Plaintiff and other members of the FLSA Collective and State Law Class.

27.     Defendants own and operate an organization of "Saber Healthcare" facilities across the eastern half of the continental United States. According to Defendants' own "Saber Healthcare" website, https://www.saberhealth.com, it operates over one hundred (100) "Saber Healthcare" facilities throughout the United States, including in Ohio, Delaware, Florida, Indiana, North Carolina, Pennsylvania, and Virginia.[3] For example, Defendants operate approximately thirty (30) "Saber Healthcare" facilities in Ohio.[4]

28.     Defendants are engaged in related activities, i.e., all activities which are necessary to the operation and maintenance of Defendants' "Saber Healthcare" facilities.

29.     Defendants share employees between "Saber Healthcare" locations.

30.     Defendants share common management between "Saber Healthcare" locations.

---

[3] *See* https://www.saberhealth.com/locations (last accessed Dec. 15, 2022). All one must do is scroll over the "locations" tab and click on one of the States in the dropdown menu to access the address of each facility.
[4] *See id.*

31.     Defendants share common ownership and, upon information and belief, common ownership or related interests across "Saber Healthcare" locations

32.     Defendants share operational control over significant aspects of the day-to-day functions of "Saber Healthcare" locations, including supervising and controlling schedules and conditions of employment of Named Plaintiff and other members of the FLSA Collective and Ohio Class.

33.     Defendants share common human resources and payroll services between "Saber Healthcare" locations. Only by way of example, all of the paystubs issued by Defendants to Named Plaintiff and, upon information and belief, other members of the FLSA Collective and State Law Class, were represented to be issued by "Saber Healthcare Group."

34.     Defendants provide the same or a similar array of products and services to customers at the "Saber Healthcare" locations.

35.     Defendants represent themselves to the general public as a single entity – "Saber Healthcare" – operating at dozens of locations throughout the United States including in Ohio. Defendants use the trade name "Saber Healthcare" at all of their "Saber Healthcare" locations.

36.     Defendants' "Saber Healthcare" locations, services and employment offerings are advertised on the same website.

37.     At all times relevant, Defendants have had joint direct or indirect control and authority over Named Plaintiff's and other members of the FLSA Collective's and State Law Class's working conditions, including matters governing the essential terms and conditions of their employment.

38.     At all times relevant, Defendants jointly exercised authority and control over Named Plaintiff and other members of the FLSA Collective and State Law Class across all "Saber Healthcare" facilities and locations.

39.     At all times relevant, Defendants had the authority to (and do) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records across all "Saber Healthcare" facilities and locations.

40.     Defendants share authority to hire, fire and discipline employees, including Named Plaintiff and other members of the FLSA Collective and Ohio Class.

41.     Defendants share authority to set rates and methods of compensation of employees, including Named Plaintiff and other members of the FLSA Collective and Ohio Class.

42.     Defendants share control and maintenance of employment records.

43.     Defendants have shared and mutually benefited from the work and services performed by Named Plaintiff and other members of the FLSA Collective and Ohio Class during the relevant time period.

44.     Defendants acted directly or indirectly in the interest of each other in relation to Named Plaintiff and other members of the FLSA Collective and Ohio Class across all "Saber Healthcare" facilities and locations.

45.     Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Named Plaintiff and other members of the FLSA Collective and Ohio Class across all "Saber Healthcare" facilities and locations.

46.     Defendants applied or caused to be applied substantially the same employment policies, practices, and procedures to all employees across all "Saber Healthcare" facilities and

locations, including policies, practices and procedures relating to the payment of wages, overtime, miscalculating the regular rate for overtime compensation purposes, and timekeeping for hourly employees including Named Plaintiff and other members of the FLSA Collective and State Law Class.

47.     At all times relevant, Defendants suffered or permitted Named Plaintiff and other members of the FLSA Collective and State Law Class to perform work uncompensated at the correct overtime rate Named Plaintiff and other members of the FLSA Collective and State Law Class were entitled to be paid across all "Saber Healthcare" facilities and locations. The improperly compensated overtime work that Named Plaintiff and other members of the FLSA Collective and State Law Class performed was for Defendants' benefit across all "Saber Healthcare" facilities and locations.

48.     At all times relevant, Defendants maintained control, oversight, and direction over Named Plaintiff and other members of the FLSA Collective and State Law Class across all "Saber Healthcare" facilities and locations, including the promulgation and enforcement of policies affecting the payment of wages and overtime.

49.     At all times relevant, Defendants have benefitted from the work performed by Named Plaintiff and other members of the FLSA Collective and State Law Class across all "Saber Healthcare" facilities and locations.

50.     During the three years preceding the filing of this Complaint, Defendants operated and controlled an enterprise and employed employees engaged in commerce or in the production of goods for commerce, "Saber Healthcare's" facilities and locations, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

51.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system which is an economic unit directed to the accomplishment of a common business purpose.

52.     Defendants' "Saber Healthcare" facilities provide the same or similar array of healthcare and related services and products to customers by using a set formula when conducting business. Defendants operate each "Saber Healthcare" location identically, or virtually identically, and Defendants' customers can expect the same kind of customer service regardless of the "Saber Healthcare" location.

53.     Part of that set formula is the deprivation of properly compensated overtime wages to their hourly non-exempt employees, including Named Plaintiff and other members of the FLSA Collective and State Law Class, as outlined in this Complaint.

54.     During the last three years, Defendants also have had an individual and combined annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

55.     Upon information and belief, Defendants, at all times relevant hereto, were fully aware of the fact that it was legally required to comply with the wage and overtime laws of the United States and of the State of Ohio, but nevertheless willfully and knowingly failed to adhere to the requirements of the FLSA and Ohio Acts.

## III.    **FACTUAL ALLEGATIONS**

56.     At all times relevant, Named Plaintiff and other members of the FLSA Collective and State Law Class were hourly, non-exempt employees entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; O.R.C. § 4111.03.

57.     Named Plaintiff and other members of the FLSA Collective and State Law Class worked overtime hours, more than forty (40) hours in a single workweek, during one or more workweeks during their employments with Defendants.

### *Defendants' Failure to Pay Named Plaintiff and other members of the FLSA Collective and State Law Class Overtime Compensation at the Correct Regular Rate of Pay*

58.     During their employments with Defendants, Named Plaintiff and other members of the FLSA Collective and State Law Class were not fully and properly paid for all of their compensable overtime hours worked because Defendants did not properly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA and the Ohio Acts, which resulted in unpaid overtime wages. Defendants did not properly calculate overtime based on Named Plaintiff's and other members of the FLSA Collective's and State Law Class's *__regular rate of pay__*, as defined by the FLSA and as required by the Ohio Acts, but instead calculated overtime compensation based on Named Plaintiff's and other members of the FLSA Collective's and State Law Class's hourly rates of pay, resulting in unpaid overtime compensation.

59.     Defendants paid Named Plaintiff and other members of the FLSA Collective and State Law Class an hourly wage for hours worked (hereinafter "Base Hourly Wage").

60.     In addition to the Base Hourly Wage, Defendants pay employees with one or more additional forms of nondiscretionary remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes, including, but not limited to, shift premiums, "pick up" bonuses for picking up shifts, retention bonuses, and other bonuses or forms of compensation which were based on objective, predetermined, and measurable criteria, induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly and/or efficiently, and/or incentivized or encouraged its workers to

remain with the company given its importance to the overall operation of Defendants' "Saber Healthcare" business (collectively hereinafter "Additional Remuneration"). *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[5]

61.     Defendants informed Named Plaintiff and other members of the FLSA Collective and State Law Class of the additional non-discretionary compensation, Additional Remuneration, upon hiring or otherwise during their employments. Named Plaintiff and other members of the FLSA Collective and the State Law Class expected to receive the Additional Remuneration and did in fact receive the Additional Remuneration on a regular basis.

62.     During the last three years preceding the filing of this Complaint, Named Plaintiff and other members of the FLSA Collective and State Law Class received or earned their Base Hourly Wage in addition to the Additional Remuneration as described above in one or more workweeks when they work overtime hours, more than forty (40) hours in a single workweek.

63.     Specifically, and only by way of example, Defendants promised Named Plaintiff and other members of the FLSA Collective and State Law Class a retention bonus contingent upon the employees working certain lengths of time. For example, in exchange for being employed during each of the pay dates, Defendants promised to pay Named Plaintiff a total of $10,000 payable on January 26, 2022, April 26, 2022, July 26, 2022, and October 26, 2022. Named Plaintiff was paid a retention bonus with respect to the January 26, 2022, April 26, 2022, and July 26, 2022 payout dates. Named Plaintiff remained employed up through and including October 31, 2022, and recently received her final payment of $2,500. As a result, there is no dispute that the retention

---

[5] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed Dec. 16, 2022).

bonuses are nondiscretionary and should have been included in Named Plaintiff's regular rate of pay.

64.     Named Plaintiff worked overtime hours, more than forty (40) hours in a single workweek, during one or more workweeks when she received or earned a retention bonus, during the same applicable period where she achieved the bonus. However, the Additional Remuneration in the form of the retention bonus was not included in her regular rate of pay for purposes of calculating her overtime rate, resulting in a clear and objective violation of the FLSA and Ohio Acts.

65.     In addition, Named Plaintiff and other members of the FLSA Collective and State Law Class received bonuses or nondiscretionary compensation when they picked up an extra shift, stayed additional time beyond their scheduled shifts, and/or worked a specific shift.

66.     Defendants' overtime compensation requirements as to this violation are summarized in 29 C.F.R. § 778.207(b):

> ***Nonovertime premiums***. The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work....

67.     In addition, 29 C.F.R. § 778.115 controls the payment of overtime when employees are paid at two or more rates:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

68.     When Defendants paid Named Plaintiff and other members of the FLSA Collective and State Law Class both their Base Hourly Wage and Additional Remuneration, Defendants

failed to properly calculate these hourly, non-exempt employees' regular rates of pay during workweeks when they worked over 40 hours because Defendants did not include the Additional Remuneration in their regular rate calculations for overtime wages.

69.     Defendants paid Named Plaintiff and other members of the FLSA Collective and State Law Class overtime compensation at one-and-one-half times their **Base Hourly Wage** and not one-and-one-half times their ***regular rate of pay*** as that phrase is defined under the FLSA. *See* 29 U.S.C. § 207(e). While the FLSA, 29 U.S.C. § 207(e), requires that all forms of remuneration "paid to, or on behalf of, the employee," such as non-discretionary shift premium compensation, must be included in the regular rate, as a result of Defendants' failure to incorporate all non-discretionary compensation into the determination of Named Plaintiff's and other members of the FLSA Collective's and the State Law Class's regular rates for purposes of calculating overtime rates for hours worked in excess of forty (40) in a given workweek, Named Plaintiff and other members of the FLSA Collective and the State Law Class were deprived of earned overtime pay at the proper overtime rate in violation of the FLSA, 29 U.S.C. § 207, and State Law, O.R.C. §§ 4111.03(A), 4113.15.

70.     Consequently, Defendants failed to properly compensate Named Plaintiff and other members of the FLSA Collective and State Law Class the overtime wages they were due in accordance with the minimum requirements of the FLSA and Ohio Acts.

71.     Defendants' failure to compensate Named Plaintiff and other members of the FLSA Collective and the State Law Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay – as a result of Defendants' unlawful failure to include required remuneration in the regular rate – constitutes a knowing and willful

violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio Acts, O.R.C. §§ 4111.03(A), 4113.15.

### *Defendants' Failure to Pay for All Hours Worked*

72. During workweeks when Named Plaintiff worked more than 40 hours in one or more workweeks, Defendants failed to pay her overtime compensation for all hours worked.

73. Upon information and belief, Defendants deducted (or simply did not compensate for) thirty (30) minutes per day from Named Plaintiff's compensable hours for a "meal period" or "meal break." However, Named Plaintiff was often unable to take a meal break, took a shortened meal break, and/or otherwise was unable to take a fully uninterrupted meal break of thirty (30) minutes because she was interrupted by job duties. Defendants do not have an established policy and/or practice for reporting missed or interrupted meal breaks.

74. Defendants knew or had reason to know that Named Plaintiff's meal breaks were either missed, shortened, and/or otherwise interrupted by job duties. Defendants also knew or had reason to know that they were not compensating Named Plaintiff for all hours, including compensable overtime hours, worked when they deducted for meal breaks.

75. In fact, despite complaining to management about the interrupted/missed meal breaks, Named Plaintiff was discouraged from reporting instances of interrupted/missed meal breaks and threatened with discipline if she did.

76. As a result of Defendants' policy and/or practice to require a 30-minute meal break deduction from Named Plaintiff's compensable hours worked for meal breaks that were not taken at all or that were interrupted by work duties, Defendants knew or had reason to know they were not compensating Named Plaintiff for all hours worked.

77.    In addition, during her employment, Defendants required Named Plaintiff to clock in/out each day to keep track of her work hours. Once clocked in[6] at the beginning of her shift, Named Plaintiff regularly performed integral and indispensable unpaid work before her scheduled shift starting time. Once clocked in and until she clocked out at the end of her shift, Named Plaintiff continued working at all times relevant. All of this work is captured on Defendants' company-wide timekeeping system.

78.    Named Plaintiff was required to be prepared to begin (and did begin) direct patient care immediately after she clocked in. However, before she was able to begin (and did begin) direct patient care, she was required to perform integral and indispensable pre-shift work that includes, but is not limited to, proceeding directly to obtain the first reports for her hall from the previous shift, reviewing treatment plans for each resident, and receiving direction/instruction for shift duties and tasks to be completed during her shift. Named Plaintiff was instructed by Defendants' supervisors and managers to clock in early, before her scheduled shift starting time, and obtain her reports each day so that she could promptly proceed with direct patient care thereafter. In addition, and on a daily basis, Named Plaintiff completed the integral and indispensable pre-shift work described above and proceeded to perform direct patient care that is part of her regular job duties as a nurse before her scheduled shift starting time.

79.    Upon information and belief, Defendants rounded and/or edited Named Plaintiff's starting time to her scheduled shift time. As a result of this time editing and/or rounding, Named Plaintiff was not paid for all of the time she was suffered or permitted to work for Defendants. Defendants rounded and/or edited Named Plaintiff's starting times despite utilizing a timekeeping

---

[6] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

system that tracks exactly when Named Plaintiff "punched" or clocked in/out each day. Despite knowing of her performance of pre-shift work during workweeks when Named Plaintiff worked more than 40 hours, Defendants did not pay Named Plaintiff for such overtime which was required to be paid at "one and one-half times" Named Plaintiff's "regular rate[s]" of pay. *See* 29 U.S.C. § 207.

80.     Moreover, despite working up through and including until she clocked out each day on a regular basis, which resulted in her working beyond the end of her scheduled shifts, Defendants regularly only compensated Named Plaintiff for hours worked until her shift ending time resulting in unpaid overtime compensation.

81.     At all times relevant, Defendants were aware that Named Plaintiff performed integral and indispensable work beyond her scheduled shifts because it trained and instructed her to perform such work, and observed her performing this work, but failed to compensate her for this work nevertheless.

82.     Defendants' policy/practice whereby it only paid Named Plaintiff for her scheduled shifts and/or improperly rounded and/or edited Named Plaintiff's punch-in and punch-out times to the detriment of Named Plaintiff and to Defendants' benefit in a non-neutral way in practice violates the FLSA and the Ohio Acts because it failed to compensate Named Plaintiff for all time she actually worked.

83.     This integral and indispensable unpaid work performed by Named Plaintiff was practically ascertainable to Defendants.

84.     There was no practical administrative difficulty of recording/paying this integral and indispensable unpaid work performed by Named Plaintiff.

85.     The unpaid work performed by Named Plaintiff constituted part of her principal activities, was required by Defendants, and was performed for Defendants' benefit.

86.     Moreover, the unpaid work was an integral and indispensable part of other principal activities performed by Named Plaintiff and was part of her continuous workday.

87.     Defendants' failure to compensate Named Plaintiff for hours worked more than forty (40) hours per week at "one and one-half times" the employee's "regular rate[s]" of pay – as a result of Defendants' unlawful time deduction for meal periods when work was completed, as well as Defendants' editing and/or rounding of compensable time worked at the beginning and end of shifts – constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio Acts, O.R.C. §§ 4111.03(A), 4113.15.

### The Willfulness of Defendants' Violations

88.     Defendants knew that Named Plaintiff and other members of the FLSA Collective and State Law Class were entitled to overtime compensation under federal and state law or acted in reckless disregard for whether they were so entitled.

89.     By denying Named Plaintiff and other members of the FLSA Collective and State Law Class overtime compensation as required by the FLSA and the Ohio Acts, Defendants' actions or omissions described in this Complaint were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal and the Ohio Acts, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendants therefore knew about the overtime compensation

requirements of the FLSA and the Ohio Acts, or acted in reckless disregard as to Defendants' obligations under these laws.

90.     Moreover, Defendants' obligations under these laws were clearly known by Defendants. Only by way of example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the director of commerce, this conspicuously-placed posting includes the language: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week..." Defendants therefore knew about the overtime requirements of the FLSA and the Ohio Acts, or acted in reckless disregard for whether Named Plaintiff and other members of the FLSA Collective and State Law Class were entitled to overtime compensation.

91.     In addition, the fact that Named Plaintiff specifically complained to management about the wrongful non-payment for interrupted/missed meal breaks (and which resulted in underpayment of overtime hours worked), but that Defendants – instead of correcting its illegal actions and paying Named Plaintiff for the interrupted/missed meal breaks as required by the FLSA and Ohio Acts – discouraged Named Plaintiff reporting instances of interrupted/missed meal breaks and threatened her with discipline if she did, further demonstrates that Defendants were acting intentionally, knowingly, and willfully in its violations of the FLSA and the Ohio Acts.

92.     Named Plaintiff and other members of the FLSA Collective and State Law Class are therefore entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. § 260.

93.     Defendants intentionally, knowingly, and willfully circumvented the requirements of the FLSA and the Ohio Acts.

94.     The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. §§ 4111.03, 4113.15; and resulted in the unlawful deprivation of wages of Defendants to the detriment of Defendants' employees, including Named Plaintiff and other members of the FLSA Collective and State Law Class.

**A.     FLSA Collective Action for Unpaid Overtime Wages**

95.     Named Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct as described herein (the "FLSA Collective").

96.     The collective that Named Plaintiff seeks to represent as members of the FLSA Collective and to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff herself is a member, is composed of and defined as follows:

> **All current and former non-exempt hourly employees of Defendants in the United States during the period of three years preceding the commencement of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay, excluding hourly nurses who worked at Aurora Manor Special Care Centre any time from November 11, 2018 to October 4, 2021.**

97.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA as to claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees, and

costs. In addition to Named Plaintiff, numerous current and former hourly employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as her own, in bringing this action.

98.     Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

99.     These similarly situated employees are known to Defendants and are readily identifiable through Defendants' business and payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. §216(b) for the purpose of collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees, and costs.

100.    Named Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the FLSA Collective consists of several hundred or more persons. Such persons are readily identifiable through the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA.

**B.      Federal Rule of Civil Procedure 23 Class Action for Unpaid Overtime Wages**

101.    Named Plaintiff brings this action under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the State Law Class, defined as:

> **All current and former non-exempt hourly employees of Defendants in Ohio during the period of two years preceding the commencement of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay, excluding hourly nurses who worked at Aurora Manor Special Care Centre any time from November 11, 2018 to October 4, 2021.**

102.     The claims brought on behalf of the State Law Class are brought on behalf of all similarly situated persons who do not opt-out of the State Law Class during the relevant time period above.

103.     The State Law Class, as defined above, is so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of several hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and the Ohio Acts. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and the Ohio Acts.

104.     Named Plaintiff is a member of the State Law Class and her claims for unpaid wages are typical of the claims of other members of the State Law Class.

105.     Named Plaintiff will fairly and adequately represent the State Law Class and the interests of all members of the State Law Class.

106.     Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the State Law Class that she has undertaken to represent.

107.     Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire State Law Class. Named Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the State Law Class in this case.

108.     Questions of law and fact are common to the State Law Class and predominate over any questions affecting only individual members. The questions of law and fact common to the State Law Class arising from Defendants' conduct include, without limitation:

(a)     whether Defendants violated the Ohio Acts by failing to pay the State Law Class for all overtime wages earned because of one or more of the violations described herein;

(b)     whether Defendants denied Named Plaintiff and other members of the State Law Class earned and owed compensation where, among other things, these employees were not paid wages for their overtime hours worked at the overtime rates required to be paid;

(c)     what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff and other members of the State Law Class on account of Defendants' violations of the Ohio Acts;

(d)     whether the unpaid and/or withheld compensation remained unpaid in violation of the Ohio Acts; and

(e)     what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by the Ohio Acts is due to Named Plaintiff and other members of the State Law Class on the overtime or other entitled compensation which was withheld or not paid to them.

109.    Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their hourly, non-exempt employees comprising of the State Law Class.

110.    Class certification is appropriate under Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the State Law Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiff and the State Law Class as a whole.

111.    Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the State Law Class predominate over questions affecting individual members of the State Law Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

112.     A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

113.     Named Plaintiff and counsel are not aware of any interfering pending Ohio litigation on behalf of the State Law Class as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendants to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV.     CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - NATIONWIDE FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME COMPENSATION)

114.     Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

115.     This claim is brought as part of a collective action by Named Plaintiff on behalf of herself and other members of the FLSA Collective against Defendants, individuals who may join this case pursuant to 29 U.S.C. § 216(b).

116.     The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

117.     Named Plaintiff and other members of the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

118.    Defendants did not pay overtime compensation to Named Plaintiff and other members of the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours worked.

119.    Defendants' failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiff and other similarly situated employees also violates the FLSA. *See* 29 C.F.R § 516.2(a)(7).

120.    As a result of Defendants' practices and/or policies, Named Plaintiff and other members of the FLSA Collective have not received overtime wages due to them pursuant to the FLSA.

121.    Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and other members of the FLSA Collective overtime compensation. Defendants' deliberate failure to pay overtime compensation to Named Plaintiff and other members of the FLSA Collective was neither reasonable, nor was the decision not to pay overtime compensation made in good faith. By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

122.    The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay Named Plaintiff and other members of the FLSA Collective is unknown at this time, as many of the records necessary to make such calculations are in the possession of Defendants and/or were not kept by Defendants.

123.    As a result of Defendants' violations of the FLSA, Named Plaintiff and other members of the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and other members of the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount

as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**COUNT II**
**(O.R.C. § 4111.03 – RULE 23 CLASS ACTION**
**FOR UNPAID OVERTIME COMPENSATION)**

124. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

125. This claim is brought under the Ohio Wage Act, which incorporates the FLSA without limitation.

126. Named Plaintiff and other members of the State Law Class have been employed by Defendants, and Defendants are each an employer covered by the overtime requirements under the Ohio Acts.

127. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5x) the employee's regular rate of pay for all hours worked over forty (40) in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1) (stating same).

128. While employed by Defendants, Named Plaintiff and other members of the State Law Class worked in excess of the maximum weekly hours permitted under Section 4111.03, but were not fully paid overtime wages as outlined above.

129. As a result of Defendants' company-wide corporate policies and/or practices as described herein, Defendants failed to pay Named Plaintiff and other members of the State Law Class all overtime wages earned.

130.     Named Plaintiff and other members of the State Law Class were not exempt from the wage protections of the Ohio Wage Act.

131.     Defendants' repeated, knowing failure to pay overtime wages to Named Plaintiff and other members of the State Law Class were violations of the Ohio Wage Act, and, as such, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and other members of the State Law Class are entitled.

132.     For Defendants' violations of the Ohio Wage Act, Named Plaintiff and other members of the State Law Class have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, interest, attorneys' fees, and all other remedies available on behalf of herself and all other members of the State Law Class.

### COUNT III
### (O.R.C. § 4113.15 – RULE 23 CLASS ACTION FOR OPPA VIOLATION)

133.     Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

134.     The OPPA encompasses two claims. First, a violation of any other wage statute (including the FLSA) triggers a failure to timely pay wages under the OPPA.

135.     Second, the OPPA allows an employee to sue to recover liquidated damages if the wages due are not in dispute.

136.     Named Plaintiff and other members of the State Law Class have been employed by Defendants.

137.     At all times relevant, Defendants were an entity covered by the OPPA, and Named Plaintiff and other members of the State Law Class have been employed by Defendants within the meaning of the OPPA.

138.     The OPPA requires Defendants to pay Named Plaintiff and other members of the State Law Class all wages, including unpaid overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

139.     At all times relevant, Named Plaintiff and other members of the State Law Class were not paid all wages, including overtime wages at one-and-one-half times their regular rates of pay within thirty (30) days of performing the work as outlined above. *See* O.R.C. § 4113.15(B).

140.     As a result, Named Plaintiff's and other members of the State Law Class's unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

141.     Defendants' violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other members of the FLSA Collective in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

142.     In violating the OPPA, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

143.     As a result of Defendants' violation of the OPPA, Plaintiff and other members of the FLSA Collective and State Law Class are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

## V.     PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendants and for an Order:

A.     Certifying the proposed FLSA collective action;

B.     Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.  Certifying the proposed State Law Class under the Ohio Acts;

D.  Finding that Defendants have failed to keep accurate records in accordance with the FLSA and the Ohio Acts and that Named Plaintiff and other members of the FLSA Collective and State Law Class are entitled to prove their hours worked with reasonable estimates;

E.  Finding that Defendants' wage and hour policies and/or practices as alleged herein violate the FLSA;

F.  Entering judgment against Defendants for damages for all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

G.  Entering judgment against Defendants for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

H.  Awarding to Named Plaintiff and other members of the FLSA Collective and State Law Class unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the Ohio Acts, including but not limited to the OPPA, including but not limited to in an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per State Law Class member, whichever is greater;

I.  Awarding Named Plaintiff and other members of the FLSA Collective and State Law Class prejudgment interest, post-judgment interest, and an award of damages representing Defendants' employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

J.  Awarding to Named Plaintiff a service award for her efforts in remedying various pay policies/practices as outlined above;

K.  Awarding to Named Plaintiff and other members of the FLSA Collective and State Law Class costs and disbursements and reasonable allowances for fees of counsel and experts and reimbursement of expenses;

L.  Directing Defendants to pay reasonable attorneys' fees and all costs connected with this action;

M.  Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

N.     Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

O.     Awarding such other and further relief as to this Court may deem necessary, just, or proper.

Respectfully submitted,

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

/s Ryan A. Winters
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Named Plaintiff and Other Members*
*of the FLSA Collective and State Law Class*

## JURY DEMAND

Named Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Daniel I. Bryant
Daniel I. Bryant